IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

| | |
|---|---|
| CROWN BAY MARINA, L.P., ) <br> ) <br> ) <br> Plaintiff, ) <br> ) Civil No. 2018-73 <br> vs. ) <br> ) <br> REEF TRANSPORTATION, LLC, *et al.*, ) <br> ) <br> ) <br> Defendants. ) | |

## MEMORANDUM OPINION

Before the Court is plaintiff Crown Bay Marina, L.P.'s ("CBM") "Motion to Disqualify Reef Transportation, LLC's Counsel," pursuant to Rules 1.9, 1.10, and 3.7 of the ABA Model Rules of Professional Conduct ("MRPC"). [ECF 238]. Reef Transportation, LLC ("Reef") opposes the motion. [ECF 246]. The Court held an evidentiary hearing on the motion on October 19, 2020, at which it heard testimony from Kosei Ohno, George H.T. Dudley, Esq., and Gregory Hodges, Esq.[1]

### I. BACKGROUND

The parties are familiar with the facts of this matter and only those facts necessary to resolve the instant motion are recited here.[2]

CBM has sued Reef in part for breach of a License Agreement for Dockage ("the License Agreement"), claiming that Reef agreed yet ultimately refused to pay for any damage to the Crown

---

[1] On October 2, 2020, the Court ordered CBM to file any reply no later than 12:00 p.m. on October 14, 2020. [ECF 242]. CBM, without seeking leave, filed a reply memorandum at 8:30 a.m. on October 19, 2020, two hours before the hearing was scheduled to begin. As the Court informed the parties at the hearing, it will not consider this late filing.

[2] These facts are derived from the testimony presented and exhibits admitted at the October 19, 2020 hearing, and the record in this case.

Bay Marina ("the Marina") caused by its vessels when they were moored at the Marina during Hurricane Irma in 2017. Ver. Compl. [ECF 1] ¶¶ 9, 14. Kosei Ohno is President of the St. Thomas Marina Corporation ("STMC"), CBM's sole general partner. CBM acquired the Marina in 1998 from Devcon.³ In 1997, Mr. Ohno, on behalf of Koben Capital Partners, Inc., engaged George Dudley, Esq., and the law firm Dudley, Topper & Feuerzeig ("DTF" or "the Firm")⁴ to represent the partners in the acquisition and financing of the Marina, as well as in the formation of CBM and STMC.⁵ The sale of the Marina to CBM closed in February of 1998. Attorney A. James Casner, III, was a partner at DTF who worked on the CBM transaction. He left the Firm shortly after the closing and he took CBM as a client to his new firm, along with most of CBM's files from DTF. Once Attorney Casner left DTF, the only CBM matters remaining with DTF related to labor and employment.⁶

From 1998 until October 27, 2017, Dennis Kissman and his company, Marina Management Services, Inc., managed the Marina. Ohno Dep. [ECF 133-2] at 11. During that time, Kissman was a limited partner at CBM. *Id.* at 13-14. On March 20, 1998, Carole Dudley,

---

³ Attorney Dudley testified that Devcon purchased the marina from a company owned by a man named Tomasco, who built the Marina in the early 1980's. According to Attorney Dudley, he and the Firm assisted Tomasco's company in negotiating the original ground lease from the Virgin Islands Port Authority, and in obtaining permits to construct the Marina, among other things. Attorney Dudley further testified that Tomasco had a "form of agreement" for marina tenants from other marinas he owned in Texas and that, at Tomasco's request, Attorney Dudley "made it consistent with Virgin Islands law."

⁴ DTF is now known as Dudley, Newman & Feuerzeig.

⁵ Mr. Ohno testified that he believes he asked attorneys at DTF to ensure the terms of the License Agreement were legally sufficient and enforceable. He also testified that he thought DTF prepared the original License Agreement. The "Matter Ledger Report" (marked as Exhibit 7 at the hearing and filed under seal), which is a summary of time billed to the file for the purchase of the Marina and related transactions, does not reference the drafting or review of the License Agreement.

⁶ Additionally, DTF was CBM's registered agent for service of process until sometime in 2016.

the Marina's operations director,[7] sent a memo to Kissman with the subject line: "License Agreement for Transient Dockage."[8]  In the document, Dudley suggests combining two documents—a "long Term Agreement" and a "Transient Agreement"—into one document for use at the Marina.  Ex. 2.  Dudley then states:  "We may wish to consult [Ohno] on this and ask if he wants to substitute the one for the other or wants a legal opinion on it."  *Id.* at 2.[9]

Almost a year later, on March 10, 1999, Carole Dudley sent a fax to Attorney Hodges.  The fax reads:  "Greg:  Pursuant to my conversation with Kosei Ohno, attached please find a copy of our License Agreement and a copy of our Rules and Regulations for your review."  [ECF 239-2] at 7.  On the License Agreement, a bracket has been handwritten next to section 12, which deals with terminations of tenant license agreements, and section 16, which relates to service of notices.  *Id.* at 9.  On the Marina Rules and Regulations, a bracket has been handwritten next to section 3.12, entitled "Commercial Activities."  *Id*. at 13.

The Firm's corresponding "Matter Ledger Report" (marked as Exhibit 5 at the hearing) contains five entries spanning from November 30, 1998 to March 12, 1999.  [ECF 246-2] at 2.  On March 10, 1999, the date of Carole Dudley's fax, Attorney Dudley billed 0.5 hours for "Telephone conference with K. Ohno re evictions of problem tenant and pursuit of lease extension."  *Id.*  At the hearing, Attorney Dudley testified that because the former matter might result in litigation, he suggested Mr. Ohno speak further with Attorney Hodges, who was a litigator.  On March 12, 1999,

---

[7] Carole Dudley previously worked for Devcon; prior to that, she worked at the Firm as a secretary.

[8] When this document, marked as Exhibit 2, was offered into evidence, the Court took its admission under advisement.  The Court now admits the document for purposes of this motion.

[9] Kissman testified during his deposition—in reference to the License Agreement—that Attorney Casner "did the original documents," [ECF 208-1] at 44, and that Kissman was the one who asked Attorney Casner to prepare the document for the Marina, and to ensure it was enforceable, [ECF 209-1] at 120-21.

*Crown Bay Marina, L.P. v. Reef Transportation, LLC, et al.*
Civil No. 2018-73
Page 4

Attorney Hodges billed 0.25 hours for a "Conference with K. Ohno re solicitation issues." *Id.* Also on March 12, 1999, another Firm attorney billed 1.50 hours to "Review license agreement for termination provisions; staff conference re strategy and course of action; telephone conference with K. Ohno re same." *Id.* There are no entries referring to a review of the License Agreement "for legal sufficiency and enforceability."

CBM filed the instant action on September 5, 2018. Ver. Compl. [ECF 1]. On October 26, 2018, Reef, represented by the Firm, answered the complaint, and in affirmative defense No. 9 stated: "CBM's license agreements are invalid because they are contracts of adhesion that are unconscionable and contrary to public policy." [ECF 10] at 3.[10] Now, nearly two years later, CBM claims that the Firm has, in a submission filed on behalf of Reef on September 15, 2020,[11] taken a position "that is materially adverse to their former client on a matter that is substantially related to their former representation of CBM." [ECF 239] at 5-9. Specifically, CBM asserts that the Firm, on Reef's behalf, is now arguing that the "License Agreement is to [sic] vague to reflect the intentions of the parties to permit [CBM] to recover by way of contract indemnity and hold harmless provision in that License Agreement." *Id.* at 1. According to CBM, "[i]n raising this argument Reef Transportation's counsel has now created an unavoidable conflict of interest as attorney Gregory Hodges and [DTF] previously represented [CBM] and on March 10, 1999 were asked to reviewed [sic] and advise CBM as to the sufficiency of the very provision of the License Agreement which they are now claiming is too vague to create an enforceable maritime contract indemnification provision." *Id.* Further, CBM contends that the Firm's attorneys are likely to be

---

[10] The Firm did not seek, and CBM did not provide, consent for the Firm to represent Reef in this matter.

[11] *See* [ECF 224].

necessary witnesses at trial. *Id*. at 9-10.[12] As a result, CBM concludes, the Firm must be disqualified from representing Reef in this matter. *Id*. at 10.

The Firm, on the other hand, denies that the work it performed for CBM in the late 1990's was related to the "legal sufficiency or enforceability" of CBM's License Agreement, or that it drafted that document, as CBM claims. [ECF 246] at 2, 7-9. Additionally, the Firm asserts that CBM mischaracterizes its argument in its September 15, 2020 submission—Reef's opposition to CBM's cross motion for summary judgment. *Id*. at 2. Because the prior work was not "substantially related" to the present matter, argues the Firm, disqualification is not warranted. *Id*. at 9. Further, the Firm contends that CBM waived any right it might have had to seek the Firm's disqualification due to the length of time CBM delayed in bringing the motion. *Id*. at 2, 10-11. Finally, the Firm denies that any of its attorneys are necessary witnesses in this case. *Id*. at 12-13.

## II. LEGAL STANDARDS

In the District Court of the Virgin Islands, the MRPC govern the professional responsibilities of practicing attorneys. *See* LRCi 83.2(a)(1); *see also VECC, Inc. v. Bank of Nova Scotia*, 222 F. Supp. 2d 717, 719 (D.V.I. 2002). Model Rule 1.9 addresses conflicts of interest stemming from representation of former clients, and provides in pertinent part:

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a **substantially related matter** in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

MRPC 1.9(a) (emphasis added); *see In re Corn Derivatives*, 748 F.2d 157, 162 (3d Cir. 1984)

---

[12] CBM also asserts that DTF lawyers and Mr. Ohno discussed unspecified "confidential and proprietary information." [ECF 239] at 3. DTF denies its prior work involved CBM's confidential information. [ECF 246] at 2.

(explaining that the purpose of MRPC 1.9 is to prevent "even the potential that a former client's confidences and secrets may be used against him," to maintain "public confidence in the integrity of the bar," and to fulfill a client's rightful expectation of "the loyalty of his attorney in the matter for which he is retained"). Accordingly, disqualification under Rule 1.9(a) requires proof that (1) an attorney-client relationship existed between the attorney and the former client; (2) the former representation was with respect to the same or a substantially related matter as the present matter; (3) the interests of counsel's current client are materially adverse to the interests of the former client; and (4) the former client has not consented to counsel's representation of his current client. *See Apeldyn Corp. v. Samsung Elecs., Co., Ltd.*, 660 F. Supp. 2d 557, 561 (D. Del. 2009); *see also Jordan v. Phila. Hous. Auth.*, 337 F. Supp. 2d 666, 672 (E.D. Pa. 2004).

"Matters are substantially related . . . if they involve the same transaction or legal dispute or if there otherwise is a substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter." MRPC 1.9, Comment 3 (quotation marks omitted). The following factors guide this Court's determination as to whether the matters are substantially related: (1) the nature and scope of the former representation; (2) the nature and scope of the present lawsuit; and (3) the possibility that CBM "might have disclosed confidences during the earlier representation which could be relevant and detrimental to the present action." *VECC, Inc.*, 222 F. Supp. 2d at 720. To assess the nature and scope of the prior representation, "the court should focus upon the reasons for the retention of counsel and the tasks which the attorney was employed to perform." *Commonwealth Ins. Co. v. Graphix Hot Line, Inc.*, 808 F. Supp. 1200, 1204 (E.D. Pa. 1992). In assessing the nature and scope of the present matter, "the court should evaluate the issues raised in the present litigation and the underlying facts." *Id.* The Court must also determine whether the

*Crown Bay Marina, L.P. v. Reef Transportation, LLC, et al.*
Civil No. 2018-73
Page 7

former client "might have" disclosed confidences that could be "relevant and detrimental" to the former client in the instant matter. *VECC, Inc.*, 222 F. Supp. 2d at 720.  In making this determination, "a court need not delve into the exact nature of confidences revealed if it is merely possible, given the nature and scope of the current and former representation, that such confidences were revealed." *Id.* at 721.

Further, to the extent a motion to disqualify seeks to implicate an entire law firm, which the instant motion does, MRPC 1.10 is also relevant.  It provides:

> While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7 or 1.9, unless the prohibition is based on a personal interest of the prohibited lawyer and does not present a significant risk of materially limiting the representation of the client by the remaining lawyers in the firm.

MRPC 1.10(a)(1).

Lastly, MRPC 3.7 concerns the "lawyer as witness" situation and provides:

> (a)  A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:
>   (1)  the testimony relates to an uncontested issue;
>   (2)  the testimony relates to the nature and value of legal services rendered in the case; or
>   (3)  disqualification of the lawyer would work substantial hardship on the client.
> (b)  A lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or Rule 1.9.

MRPC 3.7(a)-(b).

"The underlying principle in considering motions to disqualify counsel is safeguarding the integrity of the court proceedings and the purpose of granting such motions is to eliminate the threat that the litigation will be tainted." *McKenzie Constr. v. St. Croix Storage Corp.*, 961 F. Supp. 857, 859 (D.V.I. 1997).  "The district court's power to disqualify an attorney derives from

its inherent authority to supervise the professional conduct of attorneys appearing before it." *Lamb v. Pralex Corp.*, 333 F. Supp. 2d 361, 363 (D.V.I. 2004) (citing *Richardson v. Hamilton Intern. Corp.*, 469 F.2d 1382, 1385-86 (3d Cir. 1972)). "Courts are required to preserve a balance, delicate though it may be, between an individual's right to his own freely chosen counsel and the need to maintain the highest ethical standards of professional responsibility." *Gordon v. Bechtel Int'l*, 2001 U.S. Dist. LEXIS 22432, at *15 (D.V.I. Dec. 28, 2001) (quotation marks omitted).

Even if a court finds that counsel violated the MRPC, however, "disqualification is never automatic." *See Brice v. Hess Oil Virgin Islands Corp.*, 769 F. Supp. 193, 195 (D.V.I. 1990) (quoting *U.S. v. Miller*, 624 F.2d 1198, 1201 (3d Cir. 1980)). Rather, a district court should grant a motion to disqualify counsel "only when it determines, on the facts of the particular case, that disqualification is an appropriate means of enforcing the applicable disciplinary rule." *Miller*, 624 F.2d at 1201; *accord Republic of Philippines v. Westinghouse Elec. Corp.*, 43 F.3d 65, 74 (3d Cir. 1994) (noting that "a district court must ensure that there is an adequate factual predicate for flexing its substantial muscle under its inherent powers"). In making this determination, a court should balance the following factors: (1) the moving litigant's interest in "the continued loyalty of his attorney;" (2) "the opposing litigant's interest in retaining his chosen counsel;" (3) prejudice to the opposing litigant in terms of "time and expense required to familiarize a new attorney with the matter;" and (4) the "policy that attorneys be free to practice without excessive restrictions." *Brice*, 769 F. Supp. at 195.

Further, "[m]otions to disqualify are viewed with disfavor and disqualification is considered a drastic measure which courts should hesitate to impose except when absolutely necessary." *Alexander v. Primerica Holdings, Inc.*, 822 F. Supp. 1099, 1114 (D.N.J. 1993) (quotation marks omitted); *accord Prosser v. Nat'l Rural Utils. Coop. Fin. Corp.*, 2009 U.S. Dist.

LEXIS 47744, at *6 (D.V.I. June 8, 2009). "Although doubts are to be resolved in favor of disqualification, the party seeking disqualification must carry a heavy burden and must meet a high standard of proof before a lawyer is disqualified." *Alexander*, 822 F. Supp. at 1114 (quotation marks omitted). "Vague and unsupported allegations are not sufficient to meet this standard." *Cohen v. Oasin*, 844 F. Supp. 1065, 1067 (E.D. Pa. 1994); *see also Hamilton v. Dowson Holding Co.*, 2009 U.S. Dist. LEXIS 57715, at *12 (D.V.I. July 2, 2009) (stating "mere allegations of unethical conduct or evidence showing a remote possibility of a violation of the disciplinary rules will not suffice under this standard").

In addition, courts have held that a party may waive its objection to a conflict of interest by failing to timely file a motion to disqualify. *See Cubica Grp. LLLP v. Mapfre Puerto Rican Am. Ins. Co.*, 2012 U.S. Dist. LEXIS 154728, at *15 (D.V.I. Oct. 29, 2012) (finding waiver where plaintiffs waited eight months to file the motion); *Alexander*, 822 F. Supp. at 1115 (stating "[w]aiver is a valid basis for the denial of a motion to disqualify"). In determining whether the moving party has waived its right to object to the opposing party's counsel, the following factors should be considered: "(1) the length of the delay in bringing the motion to disqualify,[13] (2) when the movant learned of the conflict, (3) whether the movant was represented by counsel during the delay, (4) why the delay occurred and (5) whether disqualification would result in prejudice to the non-moving party." *Id.* "The essence of this analysis is whether the party seeking disqualification appears to use the disqualification motion as a tactical maneuver." *Rohm & Haas Co. v. Am. Cyanamid Co.*, 187 F. Supp. 2d 221, 229-30 (D.N.J. 2001); *see also Jackson*, 521 F. Supp. at 1034-

---

[13] *See, e.g., Conley v. Chaffinch*, 431 F. Supp. 2d 494, 499 (D. Del. 2006) (finding waiver after delay of nine months); *In re Modanlo*, 342 B.R. 230, 237 (D. Md. 2006) (finding waiver after delay of five months); *Alexander*, 822 F. Supp. at 1114 (finding waiver after delay of three years); *Jackson v. J.C. Penney Co.*, 521 F. Supp. 1032, 1034-35 (N.D. Ga. 1981) (finding waiver after delay of fifteen months).

35 ("A litigant may not delay filing a motion to disqualify in order to use the motion later as a tool to deprive his opponent of counsel of his choice after substantial preparation of the case has been completed.").

### III. DISCUSSION

A.    <u>Whether DTF has a Disqualifying Conflict of Interest</u>

With respect to the requirements of Rule 1.9(a), there is no dispute that (1) the Firm formerly represented CBM in a matter, and (2) CBM, as a former client, has not given written consent to the representation of Reef by the Firm in this matter. Thus, the issues before the Court are (1) whether the current representation is with respect to a matter that is "the same or substantially related to" a matter that the Firm previously handled for CBM, and (2) whether the current client's interests are "materially adverse" to the former client's interests. MRPC 1.9(a).

    1.    <u>Whether the Firm's Current Representation of Reef is with Respect to a Matter that is the Same or Substantially Related to a Matter it Previously Handled for CBM</u>

CBM contends that DTF originally drafted the License Agreement which is at issue in this case, later reviewed that agreement, and then gave CBM advice as to whether it was legally sufficient and enforceable. The evidence shows, however, that in its prior representation of CBM, DTF provided services in connection with the purchase of the Marina and the formation of the CBM and STMC entities. DTF also provided some limited additional services related to employment, as a registered agent, in connection with CBM's lease with the Virgin Islands Port Authority and with a problem tenant. By comparison, in the present matter, DTF represents Reef against allegations of negligence regarding Reef's hurricane preparations at the Marina, along with allegations that Reef failed to pay monies due under the License Agreement for damage its vessels caused the Marina. The evidence is insufficient, however, for the Court to conclude that DTF

drafted the document, reviewed the License Agreement in the context CBM claims, or advised CBM on the License Agreement's general "sufficiency" or "enforceability."[14]

Further, the Court must consider the possibility that CBM "might have disclosed confidences during the earlier representation which could be relevant and detrimental" to CBM in the present action. *See VECC, Inc.*, 222 F. Supp. 2d at 720. While the parties did not address this factor at the hearing, the Court finds that while DTF may have learned confidential information regarding the membership of the entities in the purchase transaction, including detailed financial information, that information is not relevant to the issue of whether Reef properly moored its vessels or paid what might be due under the License Agreement. Accordingly, CBM simply has not met its high burden to demonstrate that the Firm's former and current representations are "substantially related."

2. Whether Reef's Interests are Materially Adverse to CBM's

Certainly, the Firm is representing a party here that is adverse to CBM; CBM is suing DTF's client, Reef. However, CBM claims that notwithstanding the Firm's representation of Reef thus far in the litigation, it was only when Reef took the position in response to CBM's cross motion for summary judgment in September 2020 that the adversity required by Rule 1.9(a) arose. *See* [ECF 238] at 2 (stating that DTF's current position on the enforceability of the License Agreement is materially adverse to CBM's because the Firm "previously advised CBM that the agreement was sufficient to create a valid and enforceable maritime contract").

---

[14] Given the Court's skepticism regarding whether DTF drafted or reviewed the License Agreement, CBM has made an insufficient showing that anyone from DTF is a necessary witness in this matter. As a result, Rule 3.7 is not implicated.

As an initial matter, the Court notes that Reef challenged the validity of the License Agreement as far back as the filing of its Answer on October 26, 2018. But if that were not challenge enough to create "material adversity," then a closer look at Reef's argument on summary judgment may be warranted. After a review of the September 15, 2020 filing, the Court concludes that Reef, through DTF, is not making the argument CBM claims it is. While the parties may take different positions on the effect of the language relating to indemnity in the License Agreement, Reef is not arguing that the License Agreement is "too vague" to enforce. *See* [ECF 224] at 3.

In sum, the Court cannot conclude that a violation of Rule 1.9(a) has been shown. As a result, the Court need not consider whether Rule 1.10 is implicated.

B.   <u>Whether CBM Waived its Right to Move for Disqualification</u>

Even if CBM were able to demonstrate a disqualifying conflict, its failure to timely seek disqualification must result in a waiver of its ability to object to DTF's continued representation of Reef. First, this motion was brought nearly two years after the Firm entered the case on Reef's behalf. Second, although CBM claims to have learned of the conflict a mere few weeks ago, CBM obviously knew that it was previously represented by DTF. Coupled with Reef's asserted affirmative defense related to the License Agreement, CBM was therefore on notice of a potential conflict of interest from the start of the case. Third, CBM has been represented by counsel throughout this matter, and the explanation for the delay is unpersuasive.

Finally, the Court must consider whether disqualification would result in prejudice to Reef. *Alexander*, 822 F. Supp. at 1115. The Court finds that it would. The Firm has actively and forcefully litigated this matter since 2018, and the costs that would have to be borne by Reef if it had to obtain new counsel at this late stage would be significant. Further, disqualification would necessarily result in a continuance of the trial and would seriously disrupt the Court's schedule

*Crown Bay Marina, L.P. v. Reef Transportation, LLC, et al.*
Civil No. 2018-73
Page 13

and its plan to try consolidated cases. That this motion arose this late in the proceedings suggests to the Court that CBM is using the disqualification motion "as a tactical maneuver." *Rohm & Haas Co.*, 187 F. Supp. 2d at 229-30. Thus, considering the relevant factors, the Court finds that CBM has waived any objection to the Firm's continued participation in this litigation.

In short, plaintiff has come forward with nothing more than unsupported allegations of a potential conflict arising from its former representation by the Firm. Having found that the Firm's current representation of Reef is with respect to a matter that is not the same or substantially related to the matter it previously handled for CBM and considering that disqualification is a harsh measure and generally disfavored, the Court concludes that plaintiff has failed to meet its burden in demonstrating that disqualification is required pursuant to Rule 1.9 of the MRPC.

**Dated**:  October 21, 2020                S\_____
                                             **RUTH MILLER**
                                             United States Magistrate Judge